IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

PACIFIC LIFE INSURANCE COMPANY                              PLAINTIFF

v.                          CASE NO. 3:21-CV-00143 JM

KATIE BLEVINS                                                DEFENDANT

ORDER

This is an action to determine the rights of the parties pursuant to a life insurance policy. Pending is the motion for summary judgment filed by Plaintiff Pacific Life Insurance Company (Pacific Life). (ECF No. 79). Also pending is Pacific Life's motion to strike the affidavit of Defendant Katie Blevins. (ECF No. 99). Both are ripe for determination.

First the Court must address the motion to strike portions of Blevins's affidavit submitted in support of her response to the motion for summary judgment. After consideration of the arguments put forth in the parties' briefs, the Court is going to strike the following paragraphs of Blevins's affidavit (ECF No. 89): 7, 11, 12, 17, 18, 21-22, 24-26, 33, 36-41, 43, 45-47, 49, 51, 53-54, 57, 67, 70, 72-7476-78, 83, 84, 90, and 93-95.  Portions of paragraphs 61, 65, and 86 will also be stricken as follows.  From ¶ 61, strike "and would be adjusted by Pacific Life if it affected their risk, according to the Policy;" from ¶ 65 strike "was aware of the correct billing instructions as it;" and from ¶ 86, strike "three (3) days after the Policy as issued and placed in force."

I. Facts

These facts are undisputed.[1] On January 27, 2021, Dr. Travis Richardson completed an application for an individual life insurance policy with Pacific Life seeking $4,816,949.00 in

---

[1] The facts are taken largely from Blevins's responses to Pacific Life's Statement of Undisputed Material Facts. (ECF No. 90).

coverage. Blevins was Dr. Richardson's fiancé and was listed as the primary beneficiary of the policy. Lamar Breshears was the insurance agent for Pacific Life. Champion Agency ("Champion"), a field marketing organization, also plays a role in this case. Breshears describes his firm's relationship with Champion as follows: "our contract as a firm goes through Champion Agency, and they provide us the back office support, policy design, … when we complete an application, they double-check it before it goes to Pacific Life. So they're dotting the i's crossing t's, coming back to us with problems, and then assisting us with case design as well." (ECF No. 78-1, p. 5). Also on January 27, 2021, Dr. Richardson signed a form consenting to receive "documents and notices applicable to my contract . . . in electronic format when available instead of receiving paper copies of these documents by U.S. Mail." (ECF No. 78-4, p. 188).

On February 1, 2021, Champion transmitted Dr. Richardson's application to Pacific Life with the instructions to process the application and to mail the policy to Champion at its office in Albuquerque, New Mexico. (ECF No. 78-4, p. 161-162).[2] Pacific Life received Dr. Richardson's application on February 2, 2021. On March 11, 2021, Pacific Life's underwriting department approved Dr. Richardson for Policy No. VF53700260 ("the policy"), and the initial monthly premium of $16,668.68 was paid.[3] The same day that the policy was approved, Pacific Life uploaded an electronic copy of the policy to its Planned Performance Tracking portal (the "PPT portal").

---

[2] Pacific Life asserts that on March 11, 2021, it "confirmed via email that Champion preferred overnight delivery of the policy" at its physical address. Jerimiah Wise, Pacific Life's corporate representative, stated in his affidavit that "Pacific Life confirmed with Champion Agency that the policy was not to be delivered electronically." These two statements are, at best, misleading. The email exchange Pacific Life relies on in making these two statements is between two Pacific Life employees, not with Champion. (ECF No. 81, p. 14).

[3] The premium was paid by TR Management & Billing Services, LLC on Dr. Richardson's behalf.

On Thursday, March 12, 2021, Pacific Life used FedEx to overnight the policy to the Champion at the physical address in New Mexico as provided in the transmittal form. In addition to the policy, the package mailed to Champion included an amendment to the application, a policy delivery receipt, and delivery requirements.[4] Also on March 12, 2021, Dr. Richardson emailed Breshears and asked him when the policy was active. Breshears responded the same day, stating, "Today. If you were to die today, the policy would pay out a death benefit." (ECF No. 18, p. 216).

Dr. Richardson died unexpectedly on March 14, 2021.[5] The physical policy was received by Champion the following day. Pacific Life refunded the initial premium payment on March 25, 2021, taking the position that the policy was not "in force" at the time of Dr. Richardson's death because it had not been "delivered" as required by the application and policy.

Pacific Life filed a complaint seeking a declaratory judgment that the policy was not delivered and was therefore never in force. Blevins answered and counterclaimed seeking declaratory judgment that the delivery requirement had been waived and also that the delivery requirement had been met due to constructive delivery; she also asserted a claim for promissory estoppel and apparent authority.[6] (ECF No. 18). Pacific Life seeks summary judgment on its complaint and on each of the claims asserted in Blevins's counterclaim. The Court has diversity jurisdiction. The parties agree that Arkansas law applies.

## II. Legal Standard

---

[4] Blevins argues that there is no proof of what was in the FedEx package, but offers no evidence to dispute the affidavit of Jerimiah Wise establishing this fact.

[5] Blevins is also the mother of Dr. Richardson's child who was born nine days after Dr. Richardson died.

[6] The Court's order at ECF No. 101 details the procedural history of Blevins's three counterclaim iterations and why the first amended counterclaim (ECF No. 18) is the operative one.

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

### III. Analysis

A.  Was the policy delivered?

It is undisputed that delivery of the policy was a valid condition precedent to Blevins being entitled to receive payment under the policy. *See John Hancock Mut. Life Ins. Co. v. Henson*, 136 S.W.2d 684 (Ark. 1940). What the parties dispute is whether delivery was achieved. Neither the application nor the policy define "delivered" or specify the method of delivery. The application states that: "[e]xcept as provided in the terms or conditions of any "Temporary Insurance Agreement (TIA)" that I may have received in connection with this Application, *coverage will take effect when the Policy is delivered and* the entire first premium is paid *only if at that time* each Proposed Insured is alive, *and* all answers in this Application are still true and complete." (ECF No. 78-4, p. 22) (emphasis added.). Breshears testified that a TIA is a receipt for when a client "wants to bind the policy in case something happens to them before the policy is issued" and they pay a premium with the application. (ECF No. 78-1, p. 22). Dr. Richardson chose not to pay the premium at the time of his application, and no TIA was in effect.

The policy, which incorporates the application, states that "[the Policy] is In Force as of the Policy Date *subject to your acceptance of the delivered Policy* and payment of the initial

4

premium." (ECF No. 78-4 , p. 96) (emphasis added). The term "acceptance" is not defined in the policy. "In Force" is defined as meaning "a Policy is in effect and provides a Death Benefit on the Insured." (ECF No. 78-4, p. 95). "Policy Date" is defined as "the date the Policy and associated riders become effective. Policy and rider months, quarters, years and anniversaries are measured from this date." *Id.* The Policy Date for this policy was March 11, 2021.

Based on the policy language and the mailing instructions from Champion to send the policy via FedEx, Pacific Life takes the position that delivery of the policy in this case required Dr. Richardson to have received and accepted a physical copy of the policy. It is undisputed that this did not happen, and Pacific Life seeks summary judgment on these facts. The Court finds that there are no material facts in dispute and agrees that the policy was not delivered.

Blevins argues that the policy was delivered and accepted on May 11, 2021, the Policy Date listed on the policy. She makes several arguments for this conclusion.[7] First, she argues that the policy is ambiguous as certain terms were not defined—including delivered, accepted, effective, and in effect—making the policy circular, vague, ambiguous, and contradictory. Viewing the facts most favorably to her, she argues, the policy can be read to be "in force" as of the Policy Date. "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is susceptible to more than one reasonable interpretation." *Crockett v. Shelter Mut. Ins. Co.*, 589 S.W.3d 369, 371 (Ark. 2019) (citation omitted). Whether language is ambiguous is a matter of law for the Court to decide. *Id*. If it determines that the language is ambiguous, then the court "will construe the policy liberally in favor of the insured and strictly against the insurer." *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675, 677–78 (Ark. 2013).

---

[7] Blevins separately argues that Pacific Life is not entitled to summary judgment because of its conduct in discovery. However, there is no motion for sanctions pending, and Plaintiff did not submit a Rule 56(d) affidavit. Also, she found what she needed on Pacific Life's website.

Blevins has not demonstrated ambiguity in the policy language. The fact that the challenged terms are not defined does not make them vague and ambiguous. *Smith v. S. Farm Bureau Cas. Ins. Co.*, 114 S.W.3d 205, 207 (Ark. 2003). She does not supply an alternate meaning of the challenged terms that would differ from their "plain, ordinary, and popular" meaning. *ProAssurance Indem. Co. v. Metheny*, 425 S.W.3d 689, 703 (Ark. 2012). Nor does the fact that the policy contains many cross-references render it ambiguous.

Importantly, the policy must be read as a whole, and effect given to all provisions. *Philadelphia Indem. Ins. Co. v. Austin*, 383 S.W.3d 815, 820 (Ark. 2011). "Construction that neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions." *Smith* at 207. The policy in question unambiguously states that it is in force (defined as meaning in effect and paying death benefits), "*subject to* your *acceptance* of the *delivered* policy and payment of the initial premium.*"* (emphasis added). While the term "policy date" clearly was confusing even to Breshears,[8] it did not neutralize the delivery and acceptance requirements.

In addition to the delivery requirement, the application stated that coverage under the policy would take effect when it was delivered "only if at that time" the proposed insured was alive and "all answers in this Application are still true and complete." In addition to the policy, the package Pacific Life FedExed to Champion included an amendment to the application and a policy delivery receipt. The amendment sought to correct minor inaccuracies on Dr. Richardson's application, inaccuracies that Blevins asserts, and Pacific Life does not dispute, would not have affected Dr. Richardson's insurability. Nonetheless, requiring the answers to be

---

[8] "Because I've always believed and been taught that the effective date of the policy is the date that the contract is bound.· The delivery receipt is to initiate the 20-day free look period." (Breshears's deposition, ECF No. 78-1, p 22).

"true and complete" was a condition precedent to the policy being in effect. Assuming the inaccuracies were not material to insurability does not create a genuine issue of material fact that not all the answers were true.

Secondly, Blevins argues that the policy was constructively delivered. She says this happened on March 11, 2021 when the policy was uploaded by Pacific Life on the PPT portal. As a soliciting agent, Breshears was "authorized to sell insurance, to receive applications and forward them to the company or its general agent, to deliver policies when issued and to collect premiums;" he had no authority to change or waive the terms of the policy. *Dodds v. Hanover Ins. Co.*, 880 S.W.2d 311, 315 (1994). Under Arkansas law, "if the policy was mailed [to the agent] unconditionally for the sole purpose of delivery to the assured," the mailing of the policy from the insurance company to the agent would constitute constructive delivery. *Clark v. First Colony Life Ins. Co.*, 670 S.W.2d 470, 471 (1984). The burden of proof to show that the policy was unconditionally delivered to the agent for delivery to the insured is on the plaintiff. *Id.*

Viewing the evidence most favorably to Blevins, the policy was available to Breshears on March 11, 2021 via the PPT portal. However, the fact that it was available to him does not support the argument that it was delivered to him unconditionally for the sole purpose of delivery to Dr. Richardson. The evidence does not support such an inference. Breshears testified that he understood delivery of the policy to mean "physically sending the policy to the client," and that a "hundred percent of his policies have been delivered by paper." (ECF No. 78-1, p. 18). Pacific Life has established that it physically mailed the policy to Champion pursuant to the instructions it received with the transmittal of Dr. Richardson's application. Included with the mailed policy were a delivery receipt and an amendment to the application to correct minor inaccuracies. Blevins has not established that there is a genuine issue of material fact on the issue of

7

constructive delivery of the policy at the time it was uploaded to the PPT portal.

It is apparent from Pacific Life's intraoffice emails that electronic delivery in the form of E-Sign (DocuSign) would have been a valid delivery option for the policy. (ECF No. 78-4, p. 164, requesting verification of FedEx or "E-Sign (DocuSign)" delivery). However, that is not the delivery option that was chosen. Blevins argues that Dr. Richardson agreed to accept electronic delivery of policy documents, including the policy itself, when he executed the electronic information opt-in consent form (the "electronic opt-in") on January 27, 2021. With this, he consented "to receive documents and notices applicable to my contract as permitted by law, including prospectuses, prospectus supplements, reports, statements, immediate confirmations, tax forms, proxy solicitations, privacy notice and other notices and documentation in electronic format when available instead of receiving paper copies of these documents by U.S. Mail." (ECF No. 78-4 at 188). However, the electronic delivery option for the policy would have required an electronic signature (E-sign/DocuSign) to signal acceptance and delivery of the policy. Blevins does not argue that Dr. Richardson (or Bresehars) accepted the policy by electronic signature. That this was an available option, regardless of whether Bresehars had ever used it or whether Dr. Richardson would have chosen it had he been asked, does not create a question of fact as to whether the policy in this instance was electronically delivered. Finding that Pacific Life is entitled to summary judgment on the issue of delivery, the Court will not address the question of acceptance.

Blevins also claims that the delivery requirements contained in the FedExed package delivered to Champion were waived by Pacific Life. These requirements included a policy delivery receipt and an amendment to the application. Blevins relies on an email from Pacific Life to Champion dated March 11, 2021, which acknowledges that Dr. Breshears policy was

paid and states: "If you received a notification from us for outstanding delivery requirements, please provide those so the policy can be placed in force." (ECF No. 18, p. 196). Since at that time the outstanding delivery requirements had not been communicated to Breshears or Champion at that time, she argues that those delivery requirements were waived. However, even if those specific delivery requirements were waived, that does not support her claim that the precondition of delivery itself was waived.

      B. Promissory Estoppel

Blevins argues as an alternative to the policy being "in force" under the terms of the policy, that the policy should be enforced on the theory of promissory estoppel. The parties agree that promissory estoppel can be a basis for recovery "only when formal contractual elements do not exist." *Taylor v. George*, 212 S.W.3d 17, 25 (Ark. App. 2005). Blevins, of course, argues that there is a written contract, while Pacific Life argues that a condition precedent—delivery—was not met that would have placed the policy in force. While the parties have not presented a case on point, the Court agrees with the district court out of the Northern District of Iowa that "a "promissory estoppel" theory cannot be used to escape conditions precedent stated in an express agreement, where a party asserts that an express agreement otherwise states the "clear and definite promise" upon which the "promissory estoppel" claim is based." *Union Pac. R. Co. v. Cedar Rapids & Iowa City R. Co.*, 477 F. Supp. 2d 980, 1001–02 (N.D. Iowa 2007). The promise Blevins is relying on comes directly from the application for life insurance—that coverage would take effect when the policy was delivered and the first premium paid if at that time Dr. Richardson was alive and all answers in the application were still true and complete. See ECF No. 18, ¶ 58. Pacific Life is entitled to summary judgment on Blevins's promissory estoppel claim.

### C. Apparent Authority

Pacific Life also seeks summary judgment on Blevins's counterclaim for apparent authority. Blevins bases her claim of apparent authority on the notice attached to the policy telling Dr. Richardson to contact Breshears if he needed "to contact someone about this policy for any reason." This, she says, is evidence that Pacific Life was holding Breshears out as an agent with the apparent authority "to confirm Dr. Richarson's Policy was 'active' on March 12, 2021." This is the date that Dr. Richardson asked Breshears via email when his policy would be active, and Breshears responded "[t]oday." (ECF No. 91, p. 45).

Blevins agrees that Breshears was a soliciting agent, who was also sometimes referred to as a producer or subproducer, for Pacific Life. (ECF No. 91, pp. 12, 45.)[9] She does not argue that Breshears was a general agent who is normally "authorized to accept risks, to agree upon the terms of insurance contracts, to issue and renew policies and to change or modify the terms of existing contract." *Holland v. Interstate Fire Ins. Co.*, 316 S.W.2d 707, 709 (Ark. 1958). Pursuant to Arkansas law, "a soliciting agent has no authority to agree upon the terms of the policy or to change or waive those terms." *Emps. Protective Life Assur. Co. v. Gatlin*, 437 S.W.2d 811, 813 (Ark. 1969) (citing *Holland*). The application also stated that "[n]o Producer is authorized to make or change contracts or insurance policies on the behalf of [Pacific Life] and no Producer may alter the terms of this Application, the TIA, or the Policy, nor does the Producer have the authority to waive any of [Pacific Life's] rights or requirements. (ECF No. 78-4, p. 22). Therefore, as unfair and counterintuitive to a non-lawyer as it may seem, "[i]t is immaterial that [Breshears] stated that the policy would be effective immediately" as he did not have the apparent authority to waive the delivery requirement. *Id.*

---

[9] In her response brief Blevins also provides Arkansas law on insurance "brokers" who are deemed to be the agent of the insured, but she does not argue that Breshears was Dr. Richardson's broker.

V. Conclusion

The Court has no doubt that Dr. Richardson, Breshears, and Blevins believed that Dr. Richardson was covered under the policy as of March 11, 2021. However, for the reasons stated above, Pacific Life's motion for summary judgment (ECF No. 79) is GRANTED. Pacific Life's Motion to Strike the Affidavit of Katie Blevins (ECF No. 99) is GRANTED in part and DENIED in part. This case will be dismissed with prejudice.

IT IS SO ORDERED this 15th day of June, 2023.

_____
United States District Court Judge